Richmond

TOWN OF CHRISTIANSBURG v. MONTGOMERY COUNTY.

March 5, 1976.

Record No. 750088.

Present, All the Justices.

*William R. Cogar (John S. Davenport, III; Allen E. Sowder; Mays, Valentine, Davenport & Moore,* on brief), for appellant.

*Robert C. Fitzgerald (Myron C. Smith; William J. McGhee, County Attorney; Fitzgerald & Smith,* on brief), for appellee.

CARRICO, J., delivered the opinion of the court.

In this annexation case, the trial court awarded the Town of Christiansburg 3.028 square miles of Montgomery County territory adjacent to town boundaries.[1] In its decree, the court ordered the Town to pay the County $18,150 annually for five years for the County's prospective loss of alcoholic beverage control profits and sales and use taxes attributable to the annexed area. The Town has appealed, assigning error to this financial award to the County. Assigning cross-error, the County challenges the trial court's finding that necessity and expediency justified granting annexation. The County also complains of the court's refusal to require the Town to assume a portion of the existing debt of the County.

It is obvious that the real issue between the parties involves the trial court's award relating to the County's loss of ABC profits and sales and use taxes. If, however, the County is sustained on its cross-error with respect to the finding of necessity and expediency, the other questions in the case would become moot. We will consider first, therefore, the question whether the court erred in its finding of necessity and expediency.

Because the necessity and expediency issue is minor, a detailed discussion of the question is unnecessary. It suffices to note that the trial court took a view of the town and the area proposed to be annexed; it heard the evidence pro and con annexation, including the testimony of experts presented by the contesting parties; it carefully analyzed the evidence in a written opinion; and it concluded that, "considering the best interests of the county and the town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county as required" by Code § 15.1-1041(b), annexation of a 3.028 square mile area was necessary and expedient.

But, argues the County, the court's determination that annexation was expedient was tied in with its requirement that the Town compensate the County for its loss of ABC profits and sales and use taxes. The requirement for compensation, the County says, made annexation

---

[1] The annexation decree was not suspended, and the annexation became effective December 31, 1974.

expedient "in the Court's mind;" the Town had failed to carry its burden of proving expediency and the court "attempted to overcome [the] obvious inexpediency by requiring the Town to pay a part" of the County's "substantial financial losses" resulting from annexation.

The record, however, does not support the County's position that the trial court tied its finding of expediency to the requirement for compensation to the County for its loss of ABC profits and sales and use taxes. Indeed, the court's written opinion shows clearly that the finding of expediency was based upon traditional criteria of what was in the best interests of the Town, the County, and the area annexed. The pecuniary award to the County was a separate and distinct matter which the court, after first deciding that annexation was necessary and expedient, deemed a proper term and condition of annexation. There is not the slightest indication that, absent the requirement for compensation, the court would have found the annexation inexpedient.

Considering that the court's finding of necessity and expediency was based upon conflicting evidence of what was in the best interests of the areas involved, we cannot say, as we would now have to say as a matter of law, that the finding is clearly wrong and without evidence to support it. Because the finding is supported by evidence, we must sustain it. *York County* v. *City of Williamsburg*, 204 Va. 732, 736, 133 S.E.2d 520, 522-23 (1963).

■ This brings us to the question whether the trial court had the power to impose the requirement that the Town compensate the County for its prospective loss of ABC profits and sales and use taxes. In its written opinion, the court based this financial award upon a similar award made by an annexation court in an earlier proceeding brought against the County by the Town of Blacksburg (Circuit Court of Montgomery County 1970). Although the earlier proceeding was appealed to this court (*Montgomery County* v. *Town of Blacksburg*, 212 Va. 528, 186 S.E.2d 282 (1972)), on appeal no point was made of the pecuniary award. In the present case, the trial court cited and the Town has referred to no decision of this court involving a similar award.

The County relies upon the broad language of one of the annexation statutes, Code § 15.1-1042,[2] which provides that an annexation

[2] Code § 15.1-1042 provides, in pertinent part, as follows:

"§ 15.1-1042. **Powers of court and rules of decision; terms and conditions.**—The court, in making its decision, shall balance the equities in the case, and shall enter an order setting forth what it deems fair and reasonable terms and conditions, and shall direct the annexation in conformity therewith. It shall have power:

court, "in making its decision, shall balance the equities in the case, and shall enter an order setting forth what it deems fair and reasonable terms and conditions, and shall direct the annexation in conformity therewith." In balancing the equities in the present case, the County argues, the trial court had the power to impose as a term and condition of annexation the requirement that the Town compensate the County for its prospective loss of ABC profits and sales and use taxes.

The Town contends, however, that the broad language of the introductory paragraph of Code § 15.1-1042 is limited by the specific enumeration of powers, relating to financial adjustments contained in other parts of the Code section. The Town says that the powers granted to the courts with respect to financial matters differ considerably depending upon whether annexation is sought by a city or by a town. While, the Town asserts, a court arguably may have the power to order the payment required here when annexation is sought by a city, the power does not exist when a town seeks annexation.

We agree with the Town that the broad language of the introductory paragraph of Code § 15.1-1042 is limited, with respect to financial adjustments, by the specific language of other parts of the Code section. We further agree that there is a substantial difference in the powers granted in town annexation cases in contrast with city-sought annexations. The difference is logical, considering that a city annexation removes taxable values from a county while a town annexation does not.

Subsection (c) of Code § 15.1-1042 grants to the court the power

---

" . . .

"(b) To require the assumption by the city or town of a just proportion of any existing debt of the county or any district therein;

"(c) To require the payment by the city of a sum to be determined by the court, payable on the effective date of annexation, to compensate the county for the value of public improvements, including but not limited to the paving of public roads and streets, the construction of sidewalks thereon, the installation of water mains, or sewers, garbage disposal systems, fire protection facilities, bridges, public schools and equipment thereof, or any other permanent public improvements owned and maintained by the county at the time of annexation; and further to compensate the county in not more than five annual installments for prospective loss of net tax revenues during the next five years, to such extent as the court in its discretion may determine, because of annexation of taxable values to the city;

"(d) To require the payment by a town of a sum to be determined by the court, payable on the effective date of annexation to compensate the county for any such public improvement which becomes the property of the town by annexation; provided, that the order may provide that if, within five years after the order, such town becomes a city, it shall, from and after it becomes a city, make such payments as are provided for in paragraph (c) for a period not to exceed five years from the date of such order . . . ."

upon ordering annexation to require the payment by a *city* of the value of certain public improvements *and* of a county's prospective loss, caused by removal of taxable values, of net tax revenues[3] during the next five years after annexation. Subsection (d) grants to the court the power upon ordering annexation to require a *town* to pay *only* for certain public improvements which become the property of the town as a result of annexation. This subsection further permits the annexation order to provide that *if*, within five years after the order, the town becomes a city, the new city thereafter shall compensate the county for its loss of net tax revenues during the next five years after annexation.

Thus, in the area of financial adjustments, the court upon ordering annexation may require a city to compensate a county for its prospective loss of net tax revenues; but where a town is the entity awarded annexation such compensation may be required only if later the town becomes a city within the prescribed period. We believe that in these contrasting provisions, which on the one hand include the power to act in a particular manner when a city is involved but on the other hand do not include the same power when a town is involved, the General Assembly has clearly expressed the intent to exclude from an annexation court the authority to require an annexing town not yet a city to compensate a county for its prospective loss of net tax revenues. *Expressio unius est exclusio alterius.*

■ Remaining is the assignment of cross-error relating to the trial court's refusal to require the Town to assume a portion of the County's existing debt. The County says that the only reason assigned by the court for its refusal was that "none of the assessed values of the County [were] removed" as a result of annexation. This is an insufficient reason for the refusal, the County contends, because "in no case does a Town annexation remove 'assessables' of the County" and yet Code § 15.1-1042(b) (note 2, *supra*) empowers the court to require an annexing town to assume a portion of county debt.

The trial court, however, assigned an additional reason for its refusal to require the Town to assume a portion of the County's debt. The court stated that the taxpayers of the Town were "contributing their proportionate part" to payment of existing county debt "and the same [would] be true as to the taxpayers that are being brought into the town for the first time."

---

[3] For the purposes of this opinion, we treat as net tax revenues the ABC profits and sales and use taxes at issue in this case.

Code § 15.1-1042(b) empowers an annexation court to require a town to assume a *just* proportion of existing county debt. In *Norfolk County* v. *City of Portsmouth*, 124 Va. 639, 657, 98 S.E. 755, 761 (1919), we said that "the statute does not require the assumption by the municipality of some proportion 'of any existing indebtedness' mentioned, but only of such proportion thereof as may be 'just,' if any."

The trial court's statement that the taxpayers of the Town would, following annexation, contribute "their proportionate part" to payment of existing county debt, coupled with the court's observation that the annexation removed no "assessed values" from the County, amounted to a finding that it would be unjust to require the Town to assume any portion of the County's debt. We cannot say that this finding is unsupported by evidence or that the court abused its powers in refusing to order the Town to assume a portion of the County's existing debt.

For the reasons assigned, the decree of the trial court will be reversed insofar as it required the Town to compensate the County for its prospective loss of ABC profits and sales and use taxes. In all other respects, the decree will be affirmed, and final decree will be entered here.

*Affirmed in part; reversed in part; and final decree.*